UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

RYAN DALE,

Plaintiff,

v.

UNITED STATES STEEL CORPORATION,

Defendant.

Case No. 13-CV-1046 (PJS/LIB)

ORDER

Clayton D. Halunen and Ross D. Stadheim, HALUNEN & ASSOCIATES, for plaintiff.

Marilyn J. Clark, DORSEY & WHITNEY LLP; and Rodney M. Torbic, UNITED STATES STEEL CORPORATION, for defendant.

Plaintiff Ryan Dale ("Ryan") brings this action under the Minnesota Human Rights Act ("MHRA"), Minn. Stat. §§ 363A.01, et seq., alleging that defendant United States Steel Corporation ("U.S. Steel") refused to hire *him* in order to retaliate against his *father*—a long-time employee of U.S. Steel—for engaging in conduct protected by the MHRA. This matter is before the Court on U.S. Steel's motion for summary judgment. For the reasons that follow, U.S. Steel's motion is granted.

I. BACKGROUND

Ryan's father, David Dale ("David"), has worked for U.S. Steel since 1997. ECF No. 53, Ex. G at 5. David is blind in his right eye. David Dep. 74. For nearly all of his career, David has been a production-truck driver. ECF No. 53, Ex. G at 5. As traffic at

SCANNED
JUL - 2 2015
U.S. DISTRICT COURT MPLS

the mine increased and the trucks became bigger, David became concerned that his right-eye blindness was hindering his ability to drive safely. *Id.* at 7. David requested an accommodation for his disability—specifically, that a camera be installed on his truck to reduce blind spots. *Id.* at 5. In response, U.S. Steel installed a camera on one of the production trucks, but David was not always assigned that truck, and the camera did not always work. *Id.* David complained about the problems. Rather than remedy the problems, U.S. Steel took David off production trucks and assigned him to a lower-paying laborer position. *See id.* at 5-6, 9.

David then filed complaints with the Mine Safety and Health Administration, the Equal Employment Opportunity Commission, and the Minnesota Department of Human Rights, alleging discrimination based on his disability. ECF No. 53, Ex. E, Ex. C, Ex. D. David also filed a grievance. ECF No. 53, Ex. G at 4. One year after David filed his grievance, U.S. Steel addressed the problems with David's accommodation and reinstated David to production trucks. *Id.* at 16. Two years after that, in April 2012, David's grievance was finally resolved, and David was awarded $16,500 to compensate for U.S. Steel's delay in fully accommodating his disability. *Id.* at 2, 16.

About a month later, Ryan began applying for jobs at U.S. Steel. ECF No. 53, Ex. A at 2; Ryan Dep. 50-52. Ryan was interviewed for a utility-person position on October 30, 2012. ECF No. 53, Ex. I at 2. Ryan received a "Meets Expectations" rating

on his interview, but he was not hired. *Id.* at 20. Representatives of U.S. Steel testified that, when seeking to fill utility-person positions, the company only hires people who receive an "Exceeds Expectations" rating. Suihkonen Dep. 16, 105-06; Wiirre Dep. 20. Ryan continued to apply for positions at U.S. Steel, but he was not interviewed again, and he has never been hired. Ryan Dep. 62-63.

Ryan filed a one-count complaint against U.S. Steel, alleging that the company "engaged in unlawful retaliation against [Ryan] because of his father's protected activity in violation of the [MHRA]." Compl. ¶ 25. Although Ryan did not cite the specific provision of the MHRA on which he relied, his claim was clearly asserted under subdivision 1 of Minn. Stat. § 363A.15 ("Subdivision 1"), which makes it unlawful for an employer to "intentionally engage in any reprisal against any person because that person . . . opposed a practice forbidden" by the MHRA.

U.S. Steel moved for summary judgment on Ryan's reprisal claim. In resisting U.S. Steel's motion, Ryan indicated for the first time that he was also accusing U.S. Steel of violating subdivision 2 of Minn. Stat. § 363A.15 ("Subdivision 2"), which makes it unlawful for an employer to "intentionally engage in any reprisal against any person because that person . . . associated with a person . . . who [is] disabled . . . ." Specifically, Ryan alleges that U.S. Steel refused to hire him because he associated with a disabled person (that is, his father).

## II. ANALYSIS

### *A. Standard of Review*

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute over a fact is "material" only if its resolution might affect the outcome of the lawsuit under the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

### *B. Subdivision 1 Claim*

Ryan's first claim—the one pleaded in his complaint—is that U.S. Steel violated Subdivision 1 when it refused to give him a job in order to retaliate against his father because his father "opposed a practice forbidden under [the MHRA]." Minn. Stat. § 363A.15, subd. 1. Specifically, Ryan alleges that his father engaged in protected activity when he complained about U.S. Steel's failure to accommodate his disability, and that U.S. Steel "engage[d] in . . . reprisal" against his father by refusing to give Ryan a job.

Ryan thus presents what is known as a "third-party retaliation claim"—that is, a claim that an employer (here, U.S. Steel) retaliated against an employee (here, David) for engaging in protected activity, not by taking action against that employee, but by taking action against a third party (here, Ryan). The question is whether, under the MHRA, a third party in the position of Ryan—that is, someone who did not oppose any practice forbidden by the MHRA—may nevertheless sue for a violation of Subdivision 1. This question has not been explicitly addressed by the Minnesota Supreme Court, and thus this Court must attempt to predict "what that court would probably hold were it to decide the issue," taking into account "relevant state precedent, analogous decisions, considered dicta, scholarly works and any other reliable data." *Ventura v. Titan Sports, Inc.*, 65 F.3d 725, 729 (8th Cir. 1995).

The most "relevant state precedent" appears to be the decision of the Minnesota Court of Appeals in *Gagliardi v. Ortho-Midwest, Inc.*, 733 N.W.2d 171 (Minn. Ct. App. 2007). In *Gagliardi*, an employee (Gagliardi) alleged that she was fired by her employer (Ortho-Midwest) because her boyfriend had engaged in protected conduct (reporting that Gagliardi had been sexually harassed by employees of Aircast, a client of Ortho-Midwest). *Id.* at 174-75. The Minnesota Court of Appeals squarely held that, because Gagliardi had not herself engaged in protected conduct, she could not bring a reprisal claim under Subdivision 1:

> Gagliardi argues that Ortho-Midwest retaliated by terminating her employment shortly after her boyfriend complained to Aircast about the alleged incidents of sexual harassment by Aircast's employees. . . . The plain language of the Minnesota Human Rights Act defeats Gagliardi's argument. The Act makes it unlawful for an employer "to intentionally engage in any reprisal against any person because *that* person" engaged in protected conduct. Minn. Stat. § 363A.15 (emphasis added). Gagliardi was not "that person" in this case. . . .
>
> We hold that an employee must personally engage in protected conduct to establish a prima facie case of retaliation under the Minnesota Human Rights Act. Because Gagliardi cannot base her claim on her boyfriend's report to Aircast, she has failed to establish every element of a reprisal claim.

*Id.* at 182-83.

Under the reasoning of *Gagliardi*, then, Ryan cannot pursue his third-party retaliation claim, because he did not "personally engage in protected conduct." *Id.* at 183. That said, the reasoning of *Gagliardi* appears to be flawed, which ordinarily would diminish its value as evidence of what the Minnesota Supreme Court is likely to do. To explain:

*Gagliardi* appears to be flawed in conflating the question of what conduct *violates* the MHRA with the question of who may *sue* for a violation of the MHRA. The statutory language cited by *Gagliardi* relates only to the first question. Subdivision 1 provides that "[i]t is an unfair discriminatory practice"—that is, it violates the law—for

someone "to intentionally engage in any reprisal against any person because that person . . . opposed a practice forbidden under [the MHRA]." If Gagliardi's allegations were true, then Ortho-Midwest violated the law by engaging in a reprisal against Gagliardi's boyfriend (who engaged in protected conduct) by firing his girlfriend. Likewise, if Ryan's allegations are true, then U.S. Steel violated the law by engaging in a reprisal against Ryan's father (who engaged in protected conduct) by refusing to hire his son.

The real question in *Gagliardi* was not whether Ortho-Midwest violated the law, but whether Gagliardi could *sue* for that violation. And the real question in this case is not whether U.S. Steel violated the law, but whether Ryan can *sue* for that violation. That question is answered not by Subdivision 1, but instead by Minn. Stat. § 363A.28, subd. 1—a statute that was not even cited by *Gagliardi*. That statute provides that "[a]ny person aggrieved by a violation of [the MHRA] may bring a civil action as provided in section 363A.33, subdivision 1." (Section 363A.33, subdivision 1, in turn, provides simply that "[t]he commissioner or a person may bring a civil action seeking redress for an unfair discriminatory practice directly to district court.")

On its face, then, the MHRA would seem to authorize third-party retaliation claims. In *Gagliardi*, Ortho-Midwest violated the MHRA when it retaliated against Gagliardi's boyfriend because he engaged in protected activity, and Gagliardi would

seem to be a "person aggrieved" by that violation. Likewise, if Ryan's allegations are true, then U.S. Steel violated the MHRA when it retaliated against his father because he engaged in protected activity, and Ryan would seem to be a "person aggrieved" by that violation.

This is exactly how the anti-reprisal provisions of Title VII were construed by the United States Supreme Court in *Thompson v. North American Stainless, LP*, 562 U.S. 170 (2011). In *Thompson*, an employee (Thompson) was fired after his fiancée (Regalado) filed a sex-discrimination charge against North American Stainless ("NAS"), which employed both Thompson and Regalado. *Id.* at 172. The Court carefully distinguished two questions: The Court first addressed whether NAS's firing of Thompson violated Title VII and then, after concluding that it did, the Court addressed whether Thompson could sue for that violation.

The structure of Title VII is similar to the structure of the MHRA. Like the MHRA, Title VII first defines what conduct is unlawful:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter . . . .

42 U.S.C. § 2000e-3(a). In *Thompson*, the Supreme Court found that NAS violated this provision because, when it fired Thompson, it retaliated against Regalado because she had engaged in protected activity. 562 U.S. at 173-75.

Like the MHRA, Title VII then goes on to identify who may sue for a violation of its substantive provisions. Title VII provides that a charge of discrimination may be filed by "a person claiming to be aggrieved" by an unlawful employment practice, 42 U.S.C. § 2000e-5(b), and that, following certain administrative proceedings, "a civil action may be brought against the respondent named in the charge . . . by the person claiming to be aggrieved," § 2000e-5(f)(1). In *Thompson*, the Supreme Court had to decide whether Thompson was a "person claiming to be aggrieved" by NAS's unlawful retaliation against his fiancée.

The Court observed that, if § 2000e-5(f)(1) were read literally, then anyone who was injured in any way by unlawful retaliation could sue, no matter how far removed he was from the actual retaliation. *Thompson*, 562 U.S. at 176-77. The Court thought it unlikely that Congress intended such a result, and thus the Court construed the term "person aggrieved" to mean a person "within the zone of interests sought to be protected by the statutory provision whose violation forms the legal basis for his complaint." *Id.* at 177 (internal quotation marks omitted). The Court found that

Thompson fell within the zone of interests protected by Title VII and therefore was a "person aggrieved" who could bring suit. *See id.* at 178.

Without question, then, if the Minnesota Supreme Court were to interpret the "person aggrieved" language of the MHRA (specifically, Minn. Stat. § 363A.28, subd. 1) as broadly as the United States Supreme Court interpreted the "person aggrieved" language of Title VII (specifically, 42 U.S.C. § 2000e-5(f)(1)), Ryan would be able to pursue his third-party retaliation claim against U.S. Steel. Unfortunately for Ryan, however, the Minnesota Supreme Court has interpreted the "person aggrieved" language of the MHRA far more narrowly than the United States Supreme Court has interpreted the "person aggrieved" language of Title VII.

In *Krueger v. Zeman Construction Co.*, two plaintiffs brought claims under the MHRA: Pamela Krueger, who worked as a drywall installer, and Diamond Dust Contracting, LLC ("Diamond Dust"), through which Krueger did her work. 781 N.W.2d 858, 860 (Minn. 2010). Krueger and Diamond Dust were, for practical purposes, one in the same: Krueger was the sole owner and member of Diamond Dust, and she was the sole operator of the company. *Id.* Diamond Dust was hired by a general contractor, Zeman Construction Company ("Zeman"), to work on a construction project, and Krueger personally did much of the work. *Id.* After Krueger suffered various forms of sexual harassment and sex discrimination at the hands of Zeman's

employees, Diamond Dust and Krueger sued Zeman for unlawful business discrimination under the MHRA. *Id.* Specifically, Diamond Dust and Krueger sued under Minn. Stat. § 363A.17(3), which provides:

> It is an unfair discriminatory practice for a person engaged in a trade or business . . . to discriminate in the basic terms, conditions, or performance of [a] contract because of a person's . . . sex . . . , unless the alleged refusal or discrimination is because of a legitimate business purpose.

The parties did not contest that, if Zeman's employees had engaged in the conduct alleged by Diamond Dust and Krueger, then Zeman had violated § 363A.17(3). After all, Diamond Dust had a contract with Zeman, and if the allegations against Zeman were true, Zeman had "discriminate[d] in the . . . performance of [that] contract because of a person's . . . sex . . . ." Minn. Stat. § 363A.17(3). The parties also did not contest that *Diamond Dust*—which had entered into the contract with Zeman—could sue Zeman for the alleged violation of § 363A.17(3). What the parties did dispute was whether Krueger—who had not entered into any contract with Zeman—could sue Zeman for its allegedly unlawful conduct.

This question turned on the meaning of "person aggrieved" in Minn. Stat. § 363A.28, subd. 1. Again, that provision authorizes "[a]ny person aggrieved by a violation of [the MHRA]" to "bring a civil action . . . ." Krueger was clearly a "person aggrieved" in the literal sense; indeed, Zeman's unlawful conduct was directed entirely

against her. And Krueger would clearly be a "person aggrieved" under the "zone of interests" test adopted by the United States Supreme Court in *Thompson*. Section 363A.17(3) makes it unlawful for "a person engaged in a trade or business"—such as Zeman—"to discriminate in the . . . performance of [a] contract because of a person's . . . sex . . . ." Krueger is the "person" mentioned on the face of the statute.

The Minnesota Supreme Court held, however, that Krueger could not sue Zeman. The court acknowledged that Krueger had been injured by Zeman's discriminatory acts, but said that

> although an injury-in-fact is generally sufficient to establish standing, an act of discrimination alone will not satisfy the statutory standing requirement if the language of the MHRA requires more. In other words, there may be an injury-in-fact, but no legal claim recognized by the statute.

781 N.W.2d at 862 (citation omitted). The court recognized that Minn. Stat. § 363.28A, subd. 1 authorizes a person to bring a claim under the MHRA if she has been "aggrieved" by a violation of the statute. *Id.* But, the court said, "a person is 'aggrieved' in the legal sense when she has suffered the denial or infringement of a legal right, and the MHRA allows an aggrieved person to seek 'redress for an unfair discriminatory practice.'" *Id.* (quoting Minn. Stat. § 363A.33, subd. 1).

To decide whether the MHRA gave Krueger a "legal right" that had been infringed by Zeman's conduct, the court looked carefully at the relevant substantive provision—Minn. Stat. § 363A.17(3)—and concluded that the substantive provision did not provide any rights to Krueger:

> We hold that Minn. Stat. § 363A.17(3) is unambiguous, and it does not provide a cause of action for a person not a party to a contract, the performance of which is affected by business discrimination. A plain reading of section 363A.17(3) reveals that the legislature prohibited sex discrimination in the making or performance of a contract. Only a party to the contract can make the contract or be held legally responsible to "perform" pursuant to the contract. . . . Thus, the statute only provides a cause of action to the person who is denied a contract, or discriminated against in the performance of (or terms or conditions) the contract because of sex discrimination. Although Diamond Dust performed its obligations under the contract through its employees, including Krueger, only Diamond Dust is legally obligated to satisfy the terms of its contract with Zeman. Only Diamond Dust can assert its contractual rights, just as only Diamond Dust can breach the contract.

*Id.* at 863-64.

This is a much different approach than the United States Supreme Court took in *Thompson*. Under *Thompson*, a plaintiff can bring a claim under Title VII if (1) an employer discriminated against *someone* in violation of the statute; (2) the plaintiff was injured by that violation; and (3) the plaintiff was within the zone of interests sought to be protected by Title VII. Under *Krueger*, however, a plaintiff can bring a claim under

the MHRA only if the employer discriminated against *her*. Diamond Dust "has a claim under the statute," the Minnesota Supreme Court explained, because "Diamond Dust had a statutory right to perform the contract without being subject to discrimination against its employees." *Krueger*, 781 N.W.2d at 864. But Krueger could not sue because

> [t]he rights that Krueger claims for herself are not in the language of section 363A.17(3). Instead, a plain reading of the statute supports the conclusion that the legislature intended to provide contracting parties with the right to make and perform their contracts without being subject to illegal discrimination. The legislature did not, however, provide remedies to persons other than the contracting parties, and we cannot add provisions to the statute.

*Id.*

This Court suggested above that *Gagliardi* was flawed because it looked only at the relevant substantive provision of the MHRA, ignored the "person aggrieved" provision, and conflated the question of whether the MHRA was violated with the question of who could sue for that violation. This precise criticism was leveled against the majority opinion in *Krueger* by the dissent. The dissenting justices in *Krueger* argued that, although the substantive provision on which the majority focused (Minn. Stat. § 363A.17(3)) defines what conduct violates the MHRA, it is the "person aggrieved" provision (Minn. Stat. § 363A.28) that defines who may sue for a violation:

> Section 363A.17(3) addresses only the perpetrator of the discrimination rather than the victim. The section makes it unlawful "to discriminate in the basic terms, conditions, or

> performance of the contract." Minn. Stat. § 363A.17(3). . . . [T]he use of "terms," "conditions," and "performance" indicates only when it is unlawful for a person to discriminate. Those words tell us nothing about the victim of the discrimination. They do not place a limit on who may be "aggrieved" by such conduct.

*Id.* at 868 (Anderson, J., dissenting).

Unfortunately for Ryan, the dissent was a dissent. This Court must follow the *Krueger* majority, and the *Krueger* majority held that a person is "aggrieved" for purposes of the MHRA only if he is the person who was protected under the relevant substantive provision of the MHRA. In *Krueger*, the substantive provision at issue (Minn. Stat. § 363A.17(3)) protected only those who had entered into a contract, and because Krueger herself had not entered into a contract, she could not sue, even though she suffered harm as a result of Zeman's violation of the statute. Here, the substantive provision at issue (Minn. Stat. § 363A.15, subd. 1) protects from retaliation only those who "opposed a practice forbidden" by the MHRA. Because Ryan himself did not oppose any such practice, he cannot sue, even though he has allegedly suffered harm as a result of U.S. Steel's violation of the statute. For that reason, U.S. Steel's motion for summary judgment on Ryan's third-party retaliation claim is granted.

C. *Subdivision 2 Claim*

In opposing U.S. Steel's summary-judgment motion, Ryan for the first time suggested that he is also pursuing a claim under Subdivision 2, which makes it

unlawful for an employer to "intentionally engage in any reprisal against any person because that person . . . associated with a person or group of persons who are disabled or who are of different race, color, creed, religion, sexual orientation, or national origin." Minn. Stat. § 363A.15, subd. 2. Subdivision 2 is intended to prohibit retaliation against a person who associates with a member of a protected class, such as a white person who marries an African-American. Ryan alleges that U.S. Steel refused to hire him because he associated with a disabled person (his father).

As an initial matter, the Court notes that there is virtually no evidence supporting this claim, which may explain why Ryan did not plead this claim in his complaint, and why Ryan said very little about this claim in his brief. In any event, this claim is not properly before the Court.

Rule 8(a) of the Federal Rules of Civil Procedure requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "The essential function of notice pleading 'is to give the opposing party fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *N. States Power Co. v. Fed. Transit Admin.*, 358 F.3d 1050, 1056-57 (8th Cir. 2004) (quoting *Oglala Sioux Tribe of Indians v. Andrus*, 603 F.2d 707, 714 (8th Cir. 1979)). Although "the pleading requirements under the Federal Rules are relatively permissive, they do not entitle parties to manufacture claims, which were

not pled, late into the litigation for the purpose of avoiding summary judgment." *Id.* at 1057 (dismissing allegations that state regulations were unreasonable where the complaint "fail[ed] to mention the relevant legal standards," "fail[ed] to identify any . . . regulations as unreasonable," and "[did] not even contain the word 'unreasonable'").

That is exactly what Ryan has done here—manufactured a claim that was not pleaded in the complaint in order to avoid summary judgment. Ryan's complaint focuses entirely on David's protected conduct. Although the complaint does not cite Subdivision 1 specifically—it instead refers generally to the MHRA—the one and only count of the complaint alleges that U.S. Steel "engaged in unlawful retaliation against Plaintiff *because of his father's protected activity* in violation of the [MHRA]." Compl. ¶ 25 (emphasis added). That count also alleges that "[d]efendant's decision not to hire Plaintiff as an employee was motivated *by his father's protected conduct.*" *Id.* ¶ 26 (emphasis added). And that count asserts that "[t]he effect of the practices complained of above has been to deprive Plaintiff of equal employment opportunities and to otherwise adversely affect his status as an employee *because of his father's protected activity. Id.* ¶ 29 (emphasis added).

Over and over again, the complaint accuses U.S. Steel of refusing to hire Ryan for one reason: because of his father's protected activity. The complaint gives no hint that Ryan is alleging, in the alternative, that U.S. Steel refused to hire him because he

associated with a disabled person. In fact, the word "disabled" does not appear in Count One, and the word "associated" does not appear anywhere in the complaint.

Had the complaint made a claim under Subdivision 2, both parties would have conducted discovery and prepared their cases much differently. For example, it would have been crucial to identify other U.S. Steel employees—and other applicants for positions at U.S. Steel—who were disabled or who had friends or relatives who were disabled. And it would have been crucial to compare U.S. Steel's treatment of those people with its treatment of others who were not disabled or associated with disabled friends or relatives. The fact that the parties paid scant attention to these issues demonstrates that neither party believed that Ryan was pursuing a Subdivision 2 claim.

Because Ryan did not give any indication that he was pursuing a Subdivision 2 claim until he filed his brief opposing U.S. Steel's summary-judgment motion, Ryan's Subdivision 2 claim is not properly before this Court, and Ryan will not be permitted to amend his complaint to assert new claims at this late date. *See McDonald v. City of Saint Paul*, 679 F.3d 698, 708 n.8 (8th Cir. 2012) (affirming dismissal of allegations "which were not raised until [plaintiff's] opposition to defendants' motion for summary judgment").

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendant's motion for summary judgment [ECF No. 45] is GRANTED.

2. Plaintiff's complaint [ECF No. 1] is DISMISSED WITH PREJUDICE AND ON THE MERITS.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: July 2, 2015

s/ Patrick J. Schiltz
Patrick J. Schiltz
United States District Judge